101 S.W.3d 376 (2003)
In the Interest of N.L.M.
B.M., Plaintiff-Appellant,
v.
Greene County Juvenile Office, Defendant-Respondent.
No. 25139.
Missouri Court of Appeals, Southern District, Division Two.
April 10, 2003.
*377 Paul F. Sherman, Daniel, Powell & Kiefer, LLC, Springfield, for appellant.
Bill Prince, Springfield, for respondent.
*378 JOHN E. PARRISH, Judge.
B.M. (father) appeals the termination of his parental rights to N.L.M. This court affirms.
N.L.M. was born November 11, 1990. She was placed in protective custody in 1994. Prior to that time, she was in the custody of her mother. At the time the juvenile court first took custody of N.L.M., father was incarcerated in the Missouri Department of Corrections serving sentences of 10 years for first degree robbery, 20 years and 30 years for two offenses of armed criminal action, and 30 years for first degree assault. Father is still incarcerated. His sentences are consecutive sentences. He expects to have a parole hearing in 2005. He explained, "That would be the first even hint of a likelihood but thethe odds of me getting parole in 2005 are so steep I don't think I can calculate it...."
N.L.M. was returned to her mother's custody in 1998, but removed in 1999 at which time mother's parental rights were terminated. The proceeding to terminate father's parental rights that is the subject of this appeal was initiated October 23, 2001.
After an evidentiary hearing, the trial court found "based on clear, cogent and convincing evidence that the allegations contained in the Petition to Terminate Parental Rights are true and the statutory grounds for the termination of parental rights of the father exist...." The trial court concluded:
a. The father neglected the child.
b. The child has been under the jurisdiction of the court for in excess of one year and the conditions leading to the assumption of jurisdiction continue to exist.
The judgment declared:
In reaching the conclusions enumerated... the Court has considered the following factors:
a. The child's lack of emotional ties to the parent.
b. The extent to which the parent has not provided payments for the care and maintenance of the minor child including the time the child was in the custody of the Division of Family Service[s].
c. That additional services would not bring about lasting parental adjustment enabling a return of the child to a parent within an ascertainable period of time.
d. The father is serving a 90-year felony sentence which is of such a nature that the child will be deprived of a stable home for a period of years.
It concluded "that it would be in the best interests of the minor child to terminate the parental rights of the father." The parental rights of father were terminated.
Father presents three points on appeal. He argues the evidence was not sufficient to support either of the grounds the trial court found as bases for terminating parental rights (Points I and II), and that the findings the trial court made based on the required factors of § 211.447.6[1] were against the weight of the evidence.
"Juvenile proceedings and appellate review of such, partake the nature of civil proceedings and the scope of review is as in court-tried cases." C.R.K. v. H.J.K., 672 S.W.2d 696, 698 (Mo.App. 1984). The trial court order terminating parental rights is the judgment from which the appeal is taken. § 211.261, RSMo 2000; Rule 120.01. The judgment *379 will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. In Interest of S.J.G., 871 S.W.2d 638, 640 (Mo.App.1994), citing In Interest of L.W., 830 S.W.2d 885, 886 (Mo.App. 1992). This court views the facts and reasonable inferences from those facts in the light most favorable to the judgment. In Interest of M.L.K., 804 S.W.2d 398, 400 (Mo.App.1991). Where multiple statutory bases for termination of parental rights are found, all that must be found in order to affirm the judgment is that one of the statutory grounds was proven and that termination is in the best interests of the [child]. In Interest of S.J.G., supra, at 641.
M.J. v. Greene County Juvenile Office, 66 S.W.3d 745, 747 (Mo.App.2001).
The petition to terminate father's parental rights was filed by a Greene County juvenile officer. The petition alleged grounds prescribed by § 211.447.4(2) and (3). It alleged:
a. That the minor child has been abused and/or neglected. That the Juvenile Court of Greene County, Missouri, found in Case Number 199JU0551 that said minor was subject to abuse and/or neglect.
i. The father has repeatedly and continuously failed, although physically or financially able to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental or emotional health and development.
b. That the minor child has been under the jurisdiction of the juvenile court for in excess of one year and the conditions which led to the assumption of jurisdiction continue to persist or conditions of a potentially harmful nature continue to exist and there is little likelihood that those conditions will be remedied at an early enough date so that the child can be returned to a parent in the near future and the continuation of the parent and child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.
i. The father has not complied with the terms of his court ordered treatment plan.
Point II is directed to the trial court finding that N.L.M. had been under the jurisdiction of the juvenile court for more than one year and that the conditions that led to the juvenile court's jurisdiction continued to persist; that there was little likelihood those conditions would be remedied early enough for the child to be returned to a parent in the near future; and that continuation of father's parental relationship greatly diminished N.L.M.'s prospects for early integration into a stable and permanent home. Point II argues the evidence did not support that finding.
The trial court took judicial notice of Greene County Juvenile Court file No. 194JU0305. It was the case that resulted in the juvenile court originally assuming jurisdiction over N.L.M. and which adjudicated her to be neglected. N.L.M. has been under the jurisdiction of the juvenile court since July 1994. She was three years old when the juvenile court placed her in its custody. Father was incarcerated at that time. He is still incarcerated.
N.L.M. has been in protective care since the time the juvenile court took jurisdiction over her until the present, other than from July 1998 until November 1999 when N.L.M. was returned to her mother's care. N.L.M.'s mother did not successfully deal with the child's emotional problems and her resulting behavior. N.L.M. was returned *380 to protective custody. After N.L.M.'s return to protective custody, her mother voluntarily consented to termination of her parental rights.
In considering the petition to terminate father's parental rights, the trial court addressed the factors which § 211.447.4(3) required it to consider and on which it was required to make findings. It found with respect to "[t]he terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms":
The Division of Family Services caseworker, Kevin Henson, testified regarding the father's compliance with treatment recommendations. Henson stated that although child support was never ordered, the father did not provide voluntary financial support for the child. Gifts were provided to the child by third parties in the father's name. The father did not attend parenting classes due to his incarceration. The father did not maintain stable housing due to his incarceration. The father has sent letter [sic] to the child. Henson testified that the child has asked Henson not to forward those letters to her.
The trial court found that father's incarceration and unwillingness to seek out programs through the Department of Corrections precluded him from providing an appropriate home for N.L.M. This court construes the trial court finding to be that the juvenile officer and Division of Family Services had no means for rendering further assistance.
It found regarding "[a] mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control":
There was no evidence presented that the father suffered from such a condition.
With respect to "[c]hemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot be treated so as to enable the parent to consistently provide such care, custody and control," the trial court found:
There was no evidence presented that the father suffered from such a condition.
The only factor on which there were findings relevant to the termination proceedings for failure to rectify the condition that resulted in N.L.M.'s placement under the jurisdiction of the juvenile court was the factor set forth in subsection (a) of § 211.447.4(3), the required finding concerning progress in complying with terms of any applicable social service plan. The fact that findings on other factors identified in the statute were not adverse does not support father's claim that the trial court erred in terminating his parental rights due to the failure to rectify conditions that resulted in N.L.M. coming under the jurisdiction of the juvenile court. In Interest of N.M.J., 24 S.W.3d 771, 778 (Mo.App.2000).
Kevin Henson, the Division of Family Services worker who supervised N.L.M.'s case most of the time after the child was placed under the jurisdiction of the juvenile court, testified that a copy of a form providing notice to an incarcerated parent of the parent's obligations was mailed to father; that the document served as the parent's treatment plan or service agreement. It was dated July 19, 2000. Mr. Henson stated father had not complied with the terms of the plan. Father did not provide financial support for the child.
*381 The initial "permanent plan" for N.L.M. was to return home to her mother. That changed after the attempt to return N.L.M. to her mother's custody failed and the mother's parental rights were terminated. After N.L.M.'s mother's parental rights were terminated, father's only expressed interest in a permanent plan for the child was a stated wish to meet and be involved in selecting a family for N.L.M., something that could not be facilitated due to father's status as a prison inmate.
Incarceration in and of itself is not grounds for termination of parental rights. In Interest of M.H., 828 S.W.2d 951, 955 (Mo.App.1992). Incarceration, however, does not excuse a parent's obligation to provide the child with a continuing relationship, nor does it excuse a parent's obligation to make monetary contributions toward support of the child, albeit the amount of those contributions might not significantly assist in providing the child with essentials. In Interest of M.L.K., 804 S.W.2d 398, 402 (Mo.App. 1991). Financial contribution to assist with the child's needs evidences intent by a parent to continue the parent-child relationship. Id.
The trial court concluded the clear, cogent and convincing evidence in this case revealed that N.L.M. had been under the jurisdiction of the juvenile court for more than one year; that conditions that led to the assumption of jurisdiction by the juvenile court still persisted. The trial court further concluded the clear, cogent and convincing evidence in the case revealed little likelihood that the conditions that led to the child's placement under the juvenile court's jurisdiction would be remedied at an early date so the child could be returned to a parent in the near future; that continuation of the parent-child relationship greatly diminished the child's prospects for early integration into a stable and permanent home. This court finds no abuse of discretion in making those findings. Point II is denied.
There being no error in the trial court determination that sufficient grounds existed for terminating father's parental rights pursuant to § 211.447.4(3), defendant's claim of error directed to the other ground need not be addressed. Where multiple grounds are found, all that is required on appeal is the determination that one of the grounds the trial court found exists. M.J. v. Greene County Juvenile Office, supra. Point I is moot.
Point III appears to be directed to the trial court finding that it is in the best interests of N.L.M. to terminate father's parental rights. Point III alleges the trial court erred in terminating father's parental rights because its "findings in regards to the factors enumerated in Section 211.447.6 RSMo. were against the weight of the evidence."
Section 211.447.5 states that the juvenile court may terminate the rights of a parent to a child "if the court finds that the termination is in the best interest of the child and when it appears by clear, cogent and convincing evidence that grounds exist for termination pursuant to subsection 2, 3 or 4 of [that] section." Section 211.447.6 identifies factors the trial court is directed to "evaluate and make findings on ... when appropriate and applicable to the case." Point III is directed to those findings.
The trial court found no evidence that disclosed N.L.M. had healthy emotional ties to father. The record on appeal supports that finding. N.L.M. affirmatively expressed the desire not to have a relationship with father. There was testimony that N.L.M. did not wish to visit father. She did not want letters from him forwarded to her. There was no evidence *382 that he played an active part in her life. No regular visitation or other contact had been maintained between father and N.L.M.
The trial court found that father had not provided in-kind or financial support for N.L.M. It concluded "that there were no additional services that could be offered to the father." Contrary to father's argument that he took an active interest in, was committed to N.L.M., and was "involved in her case," the record disclosed the interest he displayed was, at best, tangential. The trial court finding that the best interests of the child would be served by termination of father's parental rights was not an abuse of discretion based on the evidence before it. Point III is denied. The judgment is affirmed.
PREWITT, P.J., and GARRISON, J., concur.
RAHMEYER, C.J., recuses.
NOTES
[1] References to statutes are to RSMo 2000.